b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KARL THIBODEAUX, Plaintiff | CIVIL DOCKET NO. 1:20-CV-01630 |
| VERSUS | DISTRICT JUDGE JOSEPH |
| MARCUS MYERS, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Plaintiff Karl Thibodeaux ("Thibodeaux") filed a Motion to Certify Class and Appoint Counsel (ECF Nos. 110, 116), and a second Motion for Leave to File an Amended Complaint (ECF No. 128). Defendants oppose those motions.

Because Thibodeaux has not met the prerequisites for certification of a class, his Motion to Certify Class (ECF No. 110), and Motion to Appoint Counsel (ECF No. 110, 116), should be DENIED. And Thibodeaux's Motion to Amend (ECF No. 128) to add additional Defendants should be DENIED as futile.

I. Background

Thibodeaux filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983. ECF Nos. 1, 25.[1] The named Defendants are all employed at the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, and are sued in both their individual and official capacities: Warden Marcus Meyers; Deputy Warden Rodney

---

[1] Thibodeaux paid his filing fee and is not proceeding *in forma pauperis.*

Slay; Deputy Warden Donnie Bordelon; Assistant Warden Samuel Johnson; Assistant Warden James Longino; Assistant Warden Nikki Chenevert; Assistant Warden Brent Thompson; Dr. Spencer Launey; Administrative Director Laura Deselle; Col. Benjamin Maddie; Lt. R. Lavalais; and Assistant Warden Wayne Millus.[2]

Thibodeaux asserts that he is 70 years old, handicapped, and has always been a non-smoker. He is housed in the Cajun-1 A-2 housing unit and tier because that is the tier that primarily houses inmates who are handicapped or have some other medical problems. Thibodeaux contends that, while confined in the RLCC, he has been subjected to high levels of environmental tobacco smoke ("ETS" or second-hand smoke)[3] created when other inmates dry and smoke smokeless tobacco ("snuff" or "dip"). ETS causes him Thibodeaux to have dizziness, severe headaches, nausea, sneezing, loss of appetite, coughing, burning and watery eyes, and other breathing difficulties. Thibodeaux contends he has made multiple sick call complaints due to ETS and is being subjected to the risk of serious future harm. He also contends the state law and RLCC policy against smoking indoors is not enforced at RLCC.

Thibodeaux seeks a jury trial, declaratory judgment, preliminary and permanent injunctions, monetary damages (including punitive), and costs.

---

[2] Thibodeaux also sued James LeBlanc, Secretary of the Louisiana Department of Corrections. Thibodeaux's claim against Secretary LeBlanc has been dismissed. ECF No. 105.

[3] The Complaint does not state how long Thibodeaux has been confined in RLCC.

II. Law and Analysis

    A. **Because Thibodeaux fails to state a claim against Defendants and does not meet the prerequisites for a class action, his Motions to Certify Class and to Appoint Counsel should be denied.**

Thibodeaux seeks to enjoin the sale of smokeless tobacco in the prison commissaries, as well as monetary damages. ECF No. 1. Thibodeaux argues Defendants are deliberately indifferent to the risk of serious harm to his health from second-hand smoke by failing to discontinue selling smokeless tobacco, despite knowing that inmates will misuse it by smoking it. On that basis, Thibodeaux moves to assert a class action on behalf of all inmates in Louisiana who are suffering involuntary exposure to ETS in Louisiana prisons, and has asked for the appointment of counsel. ECF Nos. 110, 116. For relief, Thibodeaux asks for damages and for the Court to enjoin prisons from selling all tobacco products.

    1. **The sale of smokeless tobacco does not violate Thibodeaux's constitutional rights.**

The sale of smokeless tobacco in the prison commissary does not violate Thibodeaux's constitutional rights. *See Wiley v. Cooley*, 2022 WL 2682131, *4 (W.D. La. 2022), *report and recommendation adopted*, 2022 WL 2679604 (W.D. La. 2022), *citing Bonds v. McCain*, 2022 WWL 728757, at *3 (W.D. La. 2022), *report and recommendation adopte*d, 2022 WL 710608 (W.D. La. 2022). Properly used, smokeless tobacco, or dip, does not emit second-hand smoke. *See id.* It is the misuse of smokeless tobacco by inmates that creates a current or serious risk of future harm to other inmates. *See id.; see also Jiles v. McCain*, 2022 WL 807034, at *4 (W.D. La.

3

2022), *report and recommendation adopted,* 1:20-CV-00282, 2022 WL 806784 (W.D. La. 2022) ("[I]t is the prohibited misuse of smokeless tobacco by inmates that causes second-hand smoke—not the sale and proper use of the smokeless tobacco.").

Because Thibodeaux has not alleged a claim cognizable under § 1983 for the sale of smokeless tobacco, this claim does not provide a legal basis for a § 1983 class action.

### 2. Thibodeaux does not have a factual basis for deliberate indifference to ETS by the RLCC prison officials.

Thibodeaux also claims that Defendants have failed to control the misuse of smokeless tobacco in RLCC and have been deliberately indifferent to the risks to his health from the ETS created by misuse of smokeless tobacco by inmates. "To prove an Eighth Amendment claim for unconstitutional prison conditions, an inmate must show that he was exposed to an objective risk of serious harm and that prison officials subjectively acted with deliberate indifference to inmate health or safety." *See Valentine v. Collier*, 141 S. Ct. 57 (U.S. 2020) (citing *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994)).

For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS,[4] but also

---

[4] It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke," that concludes the there is no risk-free level of exposure to ETS. *See Davis v. McCain*, 2018 WL 4936566, at *4 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); *Tilmon v. Keith*, 2016 WL 6662470, *1 (W.D. La. 2016); *Samuels v. Terrell*, 2015 WL 4092868, *5 (W.D. La. 2015); *Samuels v. Arnold*, 2014 WL 1340064, *3 (W.D. La. 2014); *Williams v. Johnson*, 2014 WL 2155211, *4 (W.D. La. 2016).

whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *See Hicks v. Correctional Corp. of America*, 2009 WL 2969768, at *5 (W.D. La. 2009).

On the subjective component, deliberate indifference is a "state of mind" equivalent to "recklessly disregarding" a known and substantial risk. *See Valentine*, 141 S. Ct. at 60 (citing *Farmer*, 511 U.S. at 835-36). The Supreme Court has defined "deliberate indifference" as "subjective recklessness," or a conscious disregard of a substantial risk of serious harm. *See Farmer*, 511 U.S. at 839. Prison officials thus may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering." *Valentine*, 141 S. Ct. at 60 (citing *Helling v. McKinney,* 509 U.S. 25, 33 (1993)).

In *Jiles v. McCain*, 2022 WL 807034, at *3 (W.D. La. 2022), *aff'd,* 2022 WL 806784 (W.D. La. 2022), the Court noted evidence that, since January 2017, over 600 disciplinary violations have been issued at RLCC for violations of the smoking ban. *See also, Bonds v. McCain*, 2022 WWL 728757, at *3 (W.D. La. 2022), *aff'd,* 2022 WL 710608 (W.D. La. 2022); *Gipson v. LeBlanc*, 1:17-cv-1394, ECF No. 97 (W.D. La.) (defendants submitted evidence showing that RLCC officers had issued approximately 420 disciplinary reports to inmates from 2017 through 2019 for illicit smoking or for possession of dried-out smokeless tobacco). RLCC inmates who have been disciplined for smoking have either been reprimanded or punished with loss of privileges (most often). Those cases show that Defendants are aware of the smoking

problem and have made substantial efforts to enforce the smoking ban at RLCC, and that Warden Myers has made additional efforts since he arrived at RLCC in 2020, such as removing misused microwaves from the dorms.

Defendants' efforts to stop inmates from misusing and smoking smokeless tobacco at RLCC are evidence that they have not been deliberately indifferent to the serious risk of harm to Thibodeaux (and other inmates) from second-hand smoke. Because Thibodeaux will not be able to establish a factual basis for his claim that Defendants are deliberately indifferent to the effect ETS is having on his health, this claim will not provide a factual basis for a § 1983 class action.[5]

### 3. Thibodeaux's allegations do not meet the commonality requirement for class certification.

Thibodeaux moves for certification of a class of all inmates in Louisiana prisons who are affected by involuntary exposure to ETS. Thibodeaux also moves for appointment of counsel to assist with the class action.

A class may be certified under Rule 23(b)(3) only it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3). *See Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 623 (5th Cir. 1999), *cert. den.*, 528 U.S. 1159 (2000). Under Fed. R. Civ. P. 23(a), an action may be maintained as a class action if it meets the criteria of numerosity, commonality, typicality, and adequacy of representation. *See McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995).

---

[5] Because no dispositive motion has been filed by Defendants and Thibodeaux is not proceeding *in forma pauperis*, these claims may not be dismissed pursuant to § 1915.

6

The requirements for Rule 23(b) are "predominance" and "superiority." Common questions must predominate over any question affecting only individual members. And class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *See Mullen*, 186 F.3d at 624, (citing *Amchem Products v. Windsor*, 521 U.S. 591, 615 (1997)).

Rule 23(a)(2) allows a class action to be maintained if there are questions of law or fact that are common to the class. A common question is one which, when answered as to one class member, is answered to all. *See J.D. v. Nagin*, 255 F.R.D. 406, 414 (E.D. La. 2009). The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members. *See Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 426 (5th Cir. 1997), cert. den., 522 U.S. 1052 (1998); *see also Mullen*, 186 F.3d at 625. The commonality requirement does not require that the class members' claims be identical, but only that they raise an issue subject to generalized proof such that a class action would be an efficient and economical mechanism for resolving them. *J.D.*, 255 F.R.D. at 414. "Although there need not be identity of claims, there must be common elements of law or fact such that the class action would be an economical way of prosecuting and defending claims." *Walker v. Jim Dandy Co.,* 638 F.2d 1330, 1336 (5th Cir. 1981); *see also J.D.*, 255 F.R.D. at 414.

In this instance, the only common element in a class action between multiple Louisiana prisons would be the law as to ETS and the known consequences of exposure to ETS.

However, as stated above, the sale of smokeless tobacco does not allege a violation of inmates' constitutional rights. Therefore, inmates cannot sue to enjoin the sale of smokeless tobacco in all prisons.

There remains the claim of deliberate indifference by prison officials to the effects of ETS on inmates' health. Even assuming inmates in ever prison are exposed to some level of ETS, each prison would require individual scrutiny by the Court to determine whether the prison officials have been diligent or deliberately indifferent in their efforts to curb ETS and the misuse of smokeless tobacco. A finding of deliberate indifference by officials in one prison would not resolve that issue as to all other prisons.

Moreover, requests for monetary damages would require an individualized analysis of each inmate's claim: is the ETS having a current effect on his/her health, or can they claim only a risk to their future health.

Because the success of each inmate's claim hinges on a determination as to the deliberate indifference of the prison officials at his or her prison and the inmate's individual medical problems, there are not enough common issues of fact that are "subject to generalized proof such that a class action would be an efficient and economical mechanism for resolving [them]." See *J.D.*, 255 F.R.D. at 414. Common questions of fact would not predominate over the individual questions. Therefore the commonality requirement for class certification is not met in this case.

Thibodeaux's Motions for Class Certification and for Appointment of Counsel to assist with that action (ECF Nos. 110, 116) should be denied.[6]

### B. Thibodeaux's Motion to Amend should be denied as futile and his action should be dismissed.

Thibodeaux filed a Motion for Leave to File an Amended Complaint, seeking to add new Defendants. ECF No. 128. Thibodeaux intends to add more RLCC prison officials as Defendants as he discovers their names.

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading *once* as a matter of course within: (1) 21 days after serving the pleading; or (2) 21 after service of a responsive pleading or a motion under rule as (b), (e), or (f). *See* Fed. R. Civ. P. 15(a); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993); *Aguilar v. Texas Department of Criminal Justice*, 160 F. 3d 1052, 1053 (5th Cir. 1998), cert. den., 528 U.S. 851 (1999). Thereafter (for a second or subsequent pleading, or after 21 days), a party may amend its pleading *only* with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a). Joinder of additional defendants in an action also requires permission from the court, and the defendants must be involved in the same transaction or occurrence, with common questions of law or fact, as the originally named defendants. Fed. R. Civ. P. Rule 20.

Rule 15 mandates that leave to amend "be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, leave to amend is not automatic. The

---

[6] Thibodeaux's Motion to Appoint Counsel was made with his Motion to Certify Class. ECF No. 110. To the extent Thibodeaux requests appointment of counsel for purposes other than assisting with a class action, his Motion should be denied as duplicative. ECF No. 8. The Court has already denied Thibodeaux court-appointed counsel. ECF No. 13.

decision to grant or deny a motion to amend is within the sound discretion of the trial court. *See Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991). The district court's ruling is reversible only for an abuse of discretion. *See Wimm*, 3 F.3d at 139.

Five factors must be considered in determining whether to deny a party leave to amend a complaint: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *See Smith v. EMC Corp.*, 393 F.3d 590, 595–96 (5th Cir. 2004) (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003)); *see also Freeman v. Continental Gin Co.*, 381 F.3d 459, 468-69 (5th Cir. 1967). An amendment is futile where the amended complaint fails to state a claim upon which relief can be granted. *See Henry v. United States, I.R.S.*, 2003 WL 23112853, at *3 (E.D. La. 2003) (citing *Stripling v. Jordan Production Co., L.L.C.*, 234 F.3d 863, 873 (5th Dir. 2000)). To determine futility, the district court should apply "the same standard of legal sufficiency as it applies under Rule 12(b)(6)." *See id.*

As discussed above, Thibodeaux's claim to enjoin Defendants from selling tobacco products fails to state a claim cognizable under § 1983, and Thibodeaux will not be able to establish a factual basis for his claim that the prison officials at RLCC have been deliberately indifferent to the effects ETS is having on his health. Therefore, Thibodeaux's Motion to Amend Complaint to add new Defendants (ECF No. 128) should be denied as futile.

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Thibodeaux's Motions to Certify Class and Appoint Counsel (ECF Nos. 110, 116) be DENIED.

Further, IT IS RECOMMENDED that Thibodeaux's Motion for Leave to File an Amended Complaint (ECF No. 128) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __9th__ day of December 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge