UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| KARL THIBODEAUX, Plaintiff | CIVIL DOCKET NO. 1:20-CV-01630 |
| VERSUS | DISTRICT JUDGE JOSEPH |
| MARCUS MYERS, ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

### REPORT AND RECOMMENDATION

Defendants filed a Motion for Summary Judgment, with affidavits and documentary evidence attached. ECF No. 155. In response, Thibodeaux has filed several motions, mostly for extensions of time.

Because Defendants have shown there are no genuine issues of material fact on the issue of deliberate indifference, the Motion for Summary Judgment (ECF No. 155) should be GRANTED. Thibodeaux's outstanding motions (ECF Nos. 148, 159, 161, 164, 165, 166) should be DENIED AS MOOT.

I.  **Background**

Thibodeaux filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983. ECF Nos. 1, 25.[1] The named Defendants are all employed at the Raymond Laborde Correctional Center ("RLCC") in Cottonport, Louisiana, and are sued in both their individual and official capacities. They are: Warden Marcus Myers; Deputy Warden Rodney Slay; Deputy Warden Donnie Bordelon; Assistant Warden Samuel Johnson;

---

[1] Thibodeaux paid his filing fee and is not proceeding *in forma pauperis.*

Assistant Warden James Longino; Assistant Warden Nikki Chenevert; Assistant Warden Brent Thompson; Dr. Spencer Launey; Administrative Director Laura Deselle; Col. Benjamin Maddie; Lt. R. Lavalais; and Assistant Warden Wayne Millus.[2]

Thibodeaux asserts that he is 70 years old, handicapped, and has always been a non-smoker. He is housed in the Cajun-1 A-2 housing unit and tier because that is the tier that primarily houses inmates who are handicapped or have some other medical problems. Thibodeaux contends that, while confined in RLCC, he has been subjected to high levels of environmental tobacco smoke ("ETS" or second-hand smoke) created when other inmates dry smokeless tobacco ("dip" or "snuff") in microwaves, then roll and smoke it. ETS causes him Thibodeaux to have dizziness, severe headaches, nausea, sneezing, loss of appetite, coughing, burning and watery eyes, and other breathing difficulties.

Thibodeaux contends he has made multiple sick call complaints due to ETS and is being subjected to the risk of serious future harm. He also contends the state law and RLCC policy against smoking indoors is not enforced at RLCC.[3] Thibodeaux

---

[2] Thibodeaux also sued James LeBlanc, Secretary of the Louisiana Department of Corrections. Thibodeaux's claim against Secretary LeBlanc has been dismissed. ECF No. 105.

[3] Louisiana enacted the Louisiana Smoke Free Air Act (2007), 2006 La. Acts No. 815, in La. R.S. 40:1291.2, et seq., which prohibits smoking in all public places. Effective August 15, 2009, the Act also prohibits smoking in any state, local, or private correctional facility. *See* La. R.S. 40:1291.11(B)(14).

2

seeks a jury trial, declaratory judgment, preliminary and permanent injunctions, monetary damages (including punitive), and costs.

Defendants filed a Motion for Summary Judgment, attaching a statement of material facts, affidavits, and documentary evidence. ECF No. 155.

In response to the Motion, Thibodeaux filed a Motion for Extension of Deadlines (ECF No. 159), a Motion to Set/Reset Deadlines in the scheduling order (ECF No. 161), a "Motion for Stay and Abeyance" until completion of discovery (ECF No. 164), a "Protective Motion for Extension of Time" to respond to Defendants' Motion (ECF No. 165), and a Motion for Extension to Compel Discovery (ECF No. 166). All of these motions are based on Thibodeaux's contention that Defendants have not responded to his discovery requests and he cannot adequately respond to their Motion for Summary Judgment until discovery is completed.

Thibodeaux also filed a Motion for Contact Information of Approved Medical Experts. ECF No. 148. In light of Defendants' summary judgment evidence and the foregoing recommendation that summary judgment be granted, Thibodeaux's Motions (ECF Nos. 148, 159, 161, 164, 165, 166) should be denied as moot.

II. <u>Law and Analysis</u>

   A. <u>The Supreme Court's test to determine whether an inmate is entitled to relief for exposure to ETS in prison.</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" on convicted inmates during imprisonment. The Eighth Amendment

3

encompasses a right to "reasonable safety," including protection against unsafe conditions that pose "an unreasonable risk of serious damage to [the inmate's] future health." *See Helling v. McKinney,* 509 U.S. 25, 33, 35 (1993); *see also Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016), cert. den., 137 S. Ct. 489 (U.S. 2016). A prison official's duty to protect against such unsafe conditions arises where the inmate has been placed "under a regime that incapacitates [him] to exercise ordinary responsibility for his own welfare." *County of Sacramento v. Lewis,* 523 U.S. 833, 851 (1998); *see also Legate*, 822 F.3d at 210.

In *Helling,* 509 U.S. at 34, the Supreme Court held the Eighth Amendment protects against imminent dangers as well as current unnecessary and wanton infliction of pain and suffering. *See also Legate*, 822 F.3d at, 210. Prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishment by exposing inmates to ETS. *See Helling,* 509 U.S. at 33-35.

"[A]n Eighth Amendment claim requires proof of (1) an objective exposure to a substantial risk of harm and (2) deliberate indifference of a prison official where (A) the official had subjective knowledge that the inmate faced a substantial risk of harm and (B) disregarded the risk." *Valentine v. Collier*, 993 F.3d 270, 281 (5th Cir.2021); *see also Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994). For the objective component of the burden of proof, a plaintiff must show that he is being exposed to unreasonably high levels of ETS. The objective factor not only embraces the scientific and

4

statistical inquiry into the harm caused by ETS,[4] but also whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *See Hicks v. Correctional Corp. of America*, 2009 WL 2969768, at *5 (W.D. La. 2009). Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Valentine*, 993 F.3d at 281.

> B. <u>Defendants have not been deliberately indifferent to the harm caused to Thibodeaux's health by exposure to second-hand smoke.</u>

Thibodeaux contends that second-hand smoke from inmates altering and smoking smokeless tobacco at RLCC is making him sick. Thibodeaux contends Defendants are deliberately indifferent to the serious risk of harm to his future health caused by the ETS.

Defendants show, in their statement of material facts, that Thibodeaux has been housed at RLCC since 2007, but his first grievance concerning exposure to second-hand smoke was filed on May 18, 2020. ECF No. 155-1 at 1.

---

[4] It is well-established that ETS is dangerous. Courts in this district have given judicial notice to the Surgeon General's 2006 report, "The Health Consequences of Involuntary Exposure to Tobacco Smoke," that concludes the there is no risk-free level of exposure to ETS. *See Davis v. McCain*, 2018 WL 4936566, at *4 (W.D. La. 2018) (R&R), report and recommendation adopted, 2018 WL 4925676 (W.D. La. 2018); *Tilmon v. Keith*, 2016 WL 6662470, *1 (W.D. La. 2016); *Samuels v. Terrell*, 2015 WL 4092868, *5 (W.D. La. 2015); *Samuels v. Arnold*, 2014 WL 1340064, *3 (W.D. La. 2014); *Williams v. Johnson*, 2014 WL 2155211, *4 (W.D. La. 2016).

5

Defendants also show that the policies and rules banning smoking in RLCC, and discipline for inmates who break those rules, have been published and disseminated at RLCC. ECF No. 155-1 at 2; No. 155-3; No. 155-4; No. 155-5. Defendants show that "no smoking" signs are posted conspicuously; smoking cessation assistance is available for inmates upon request; the inmate TV room is closed when inmates are discovered smoking there; and microwaves are removed from inmate dormitories when inmates are caught using them to dry smokeless tobacco or to light pencil shavings (to light the tobacco). ECF No. 155-1 at 2.

Warden Myers states in his affidavit that he has published and disseminated among RLCC personnel and inmates: (1) the Disciplinary Rules and Regulations for Adult Offenders, which contains prohibitions against smoking and the use of tobacco products for the purpose of smoking, and further prohibits the starting of a spark and/or fire by any means for any purpose other than a legal work assignment; and (2) the 2016 and 2020 versions of the Offender Rules and Discipline–Smoking Policies for Offenders. ECF No. 155-14 at 1. Warden Myers has authorized the closing of the inmate dayroom/TV room when smoking or evidence of smoking is discovered, resulting in it having been closed on more than one occasion. ECF No. 155-14 at 2. Warden Myers has authorized the removal of microwaves from inmate dormitories when it is discovered that inmates have used the microwaves to dry smokeless tobacco or to light smokeless tobacco cigarettes, and they have been removed on more than one occasion. ECF No. 155 -14 at 2. Warden Myers authorized the RLCC

medical director and mental health director to implement a smoking cessation program for inmates. ECF No. 155-14 at 2. Warden Myers directed that "no smoking" signs be placed conspicuously around the prison, dormitories, and tiers. ECF No. 155-14 at 2. And Warden Myers is aware that several hundred disciplinary reports have been issued for inmates for violating the smoking ban since January 2017. ECF No. 155-14 at 2.

Deputy Warden Slay states in his affidavit that he and all staff that he supervises have been instructed to report all smoking violations in a disciplinary write-up and to forward the disciplinary report for disciplinary proceedings. ECF No. 155-15 at 1. Slay further states that smoking cessation assistance and literature have been offered and taught in the past and are available to all inmates on request, and that the steps taken to enforce the smoking ban have been continual, incremental, and progressive. ECF No. 155-15 at 2. Slay is aware that several hundred disciplinary reports have been issued for inmates for violating the smoking ban since January 2017. ECF No. 155-15 at 2.

Deputy Warden Donnie Bordelon, Assistant Warden Samuel Johnson, Assistant Warden James Longino, Assistant Warden Brent Thompson, and Assistant Warden Wayne Millus state in their affidavits that they have disseminated, among RLCC personnel and inmates, the rules and regulations prohibiting smoking and the use of tobacco products for the purpose of smoking, and the prohibition against starting a spark or fire. ECF No. 155-16; No. 155-17; No. 155-18; No. 155-20; No. 155-

22. Bordelon, Johnson, Longino, and Thompson further state that they have authorized the closing of the dayroom/tv room and the removal of microwaves from inmates' dormitories due to violations of the smoking ban. ECF No. 155-16; No. 155-17; No. 155-18; No. 155-20.

Millus states that he has warned inmates of the consequences of misuse of the dormitory microwaves. ECF No. 155-22. Bordelon, Johnson, Longino, Thompson, and Millus have also directed the conspicuous placement of the no-smoking signs in the prison. ECF No. 155-16; No. 155-17; No. 155-18; No. 155-20; No. 155-22. Bordelon states that three corrections officers are assigned to continuously monitor and inspect each eight-tier dormitory, including the detection of contraband such as smoking tobacco, for which disciplinary write-ups are given. ECF No. 155-16 at 2. Thompson also states in his affidavit that, in the supervisor meetings he presides over, he emphasizes the importance of enforcing the smoking ban by writing up offenders who violate the ban and of imposing significant disciplinary consequences. ECF No. 155-20 at 2. Bordelon, Johnson, Longino, and Millus state that smoking cessation assistance has been offered in the past to inmates and literature is made available upon the request of the inmate. ECF No. 155-16; No. 155-17; No. 155-18; No. 155-22. Bordelon, Johnson, Longino, Thompson, and Millus further state that they are aware that several hundred disciplinary reports have been issued since January 2017 for violations of the smoking ban. ECF No. 155-16 at 2; No. 155-17 at 2; No. 155-18 at 2; No. 155-20; No. 0155-22.

Assistant Warden Nikki Chenevert states in her affidavit that she is charge of the medical department at RLCC and that: (1) she has no authority to make housing assignments of inmates; (2) she has no control or authority over medical decision-making; (3) she has no responsibility or authority over security enforcement of the no-smoking policy; (4) she has been instructed to issue a disciplinary write-up to any inmate she finds violating the smoking ban; and (5) smoking cessation assistance and literature is available to inmates on request.  ECF No. 155-19.

Dr. Spence Launey, the Medical Director at RLCC, states in his affidavit that Warden Myers has posted "declarations" about the dangers of smoking and enforcement of the smoking ban in the inmate dorms and prison common areas for inmates and personnel.  ECF No. 15-21.  Dr. Launey also states that smoking cessation assistance is available to all inmates through the RLCC mental health department.  ECF No. 15-21.

Laura Desselle, the Business Office Administrative Director at RLCC, states in her affidavit that she is responsible for accounting for the RLCC budget, offender accounts, offender banking, and the RLCC offender canteen.  Desselle has no authority or responsibility over enforcement of the smoking ban, nor does she profit from the sale of smokeless tobacco in the canteen.  ECF No. 155-30.

Lt. Colonel Benjamin Maddie states in his affidavit that he supervises the RLCC inmate canteen.   ECF No. 155-31.  Maddie states that the decision regarding what items will be sold in the canteen is determined at a Canteen Standards Meeting

held at the Louisiana Department of Corrections Headquarters in Baton Rouge. ECF No. 155-31. Any inmate found drying tobacco, rolling cigarettes, or smoking tobacco is charged with possession of contraband and disciplined. ECF No. 155-31. Maddie also states the inmate dayroom/TV room is closed when smoking or evidence or smoking is discovered, and that it has been closed on more than one occasion. ECF No. 155-31. The microwave ovens are removed from inmate dorms when inmates are discovered using the microwaves to dry smokeless tobacco or light cigarettes, and they have been removed more than once. ECF No. 155-31. Maddie further states that he directs all personnel under his supervision to enforce the no smoking policy at RLCC and that he personally enforces it. ECF No. 155-31.

Lt. Rachel Lavalais states in her affidavit that she is in charge of the inmate canteen at RLCC and is responsible for the operation of the canteen. ECF No. 155-32. Lt. Lavalais has no authority or responsibility for setting a weekly limit on the purchase of smokeless tobacco by inmates, or for the smoking ban. ECF No. 155-32. Lt. Lavalais does not profit from the sale of smokeless tobacco in the canteen. ECF No. 155-32. Smoking cessation assistance is available to all inmates through the Mental Health Department at RLCC, upon request, which includes nicotine patches that can be purchased through the canteen upon request and authorization. ECF No. 155-32.

Defendants submitted copies of the disciplinary rules and smoking policies at RLCC (ECF Nos. 155-3, 155-4, 155-5) and the smoking cessation literature that is

available (ECF No. 155-23). Defendants also submitted copes of almost 900 disciplinary reports that were issued for smoking violations from January 2017 through August 2022. ECF Nos. 155-6 through 155-13. Those reports show that Defendants are aware of the smoking problem at RLCC, and have made substantial efforts to enforce the smoking ban.

Defendants have offered uncontroverted evidence of the efforts made at RLCC to stop inmates from smoking, to punish inmates for doing so, and to enforce Louisiana law in this regard. Thus, Defendants have not been deliberately indifferent to any serious risk of harm to Thibodeaux. Because there are no genuine issues of material fact on the issue of deliberate indifference, summary judgment is warranted.

I.   Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (ECF No. 155) be GRANTED and that Thibodeaux's action be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Thibodeaux's Motion for Contact Information of Approved Medical Experts (ECF No. 148), Motion for Extension of Deadlines (ECF No. 159), Motion to Set/Reset Deadlines (ECF No. 161), Motion for Stay and Abeyance (ECF No. 164), Protective Motion for Extension of Time (ECF No. 165), and Motion for Extension to Compel Discovery (ECF No. 166) be DENIED AS MOOT.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __23rd__ day of February 2023.

Joseph H.L. Perez-Montes
United States Magistrate Judge